# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5089 | **DATE** | 2/20/2003 |
| **CASE TITLE** | IL Bell Telephone Co. vs. Kevin K. Wright, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for summary judgment [9-1] is denied. Declaratory judgment is hereby entered in favor of the defendants and against the plaintiff. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 21 2003 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ILLINOIS BELL TELEPHONE COMPANY ) <br> d/b/a AMERITECH ILLINOIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KEVIN K. WRIGHT, et al. ) <br> ) <br> Defendants. ) | No. 02 C 5089 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Ameritech Illinois filed this lawsuit challenging a determination of the Commissioners of the Illinois Commerce Commission ("ICC") that Ameritech Illinois could not charge fees for manual loop qualification procedures as part of its interconnection agreement with McLeodUSA Telecommunications Services, Inc. ("McLeod"). This matter is currently before the Court on Ameritech Illinois' motion for summary judgment on its claims against McLeod and the ICC. Because we find there is no genuine issue of material fact and that the ICC and McLeod are entitled to judgment as a matter of law, Ameritech Illinois' motion is denied, and declaratory judgment is entered for the ICC and McLeod. (R. 9-1.)

## RELEVANT FACTS

As part of the deregulation of the telecommunications industry under the Telecommunications Act of 1996 (the "Act"), incumbent local exchange carriers ("ILECs") are required to negotiate interconnection agreements with competing local exchange carriers ("CLECs") seeking to enter the local telecommunications marketplace. 47 U.S.C. § 251. These interconnection agreements allow a CLEC, in return for negotiated fees, to utilize portions of an

ILEC's infrastructure to set up competing telecommunications services. Upon request, the ILEC has a duty to attempt to negotiate an interconnection agreement with a CLEC. 47 U.S.C. §§ 251-252(a)(1). To the extent that the parties are not able to resolve any provisions of the interconnection agreement after a period of negotiation, either party may petition the appropriate state agency to oversee mandatory arbitration of any open issues. 47 U.S.C. § 252(b). The state agency's responsibility in turn is to ensure that the resulting interconnection agreement complies with the provisions of the Act, and in particular, that negotiated rates comply with the pricing methodology for network elements promulgated by the FCC under the Act. 47 U.S.C. § 252 (e)(1) – (2).

The Act authorizes the FCC to establish a pricing methodology for determining the costs associated with different network elements provided by the ILEC to the CLEC in an interconnection agreement. 47 U.S.C. § 251. The resulting FCC rules established the Total Element Long-Run Incremental Cost ("TELRIC") methodology, providing that costs for network elements be "based on the use of the most efficient telecommunications technology currently available and the lowest cost network configuration, given the existing location of the [ILEC's] wire centers." 47 C.F.R. § 51.505(b)(1). Either party to an interconnection agreement may seek federal court review of an agreement provision approved by a state agency if it believes that provision fails to comply with a provision of the Act or the FCC rules promulgated thereunder. 47 U.S.C. § 252(e)(6).

Pursuant to the Act, Ameritech Illinois and McLeod entered into negotiations for an interconnection agreement. Because they were unable to agree on terms for a number of provisions in the agreement, McLeod petitioned the ICC for arbitration resolving the open issues. (R. 9, Pl.'s Facts, ¶ 4.) One of these provisions concerned Ameritech Illinois' ability to

charge for a service called "manual loop qualification," performed to determine whether the transmission path carrying telecommunications services to subscribers can support various types of advanced telecommunications services. (*Id.* at ¶¶ 11, 18.) Ameritech Illinois introduced evidence that, while most requests for loop qualification information could be handled through a mechanized process, certain situations occurred where staff intervention was necessary in order to retrieve mechanized information on loop status. (*Id.* at ¶14.) To support its proposed charge as required under the FCC rules, 47 C.F.R. § 51.505(e), Ameritech Illinois provided a cost study that purported to comply with the TELRIC pricing standards and detailed the additional labor costs associated with the manual loop qualification procedure.

As is usual in ICC arbitration proceedings, the ICC staff prepared its recommendations for resolving the disputed provisions of the agreement. (R. 9, Pl.'s Facts, ¶¶ 5-6.) The ICC staff recommended that the proposed charge for the manual loop qualification procedure not be incorporated in the agreement on the grounds that the charge did not comply with TELRIC principles. (R. 10, Pl.'s App., Ex. A at 20.) Administrative Law Judges also reviewed the evidence presented during the hearings as well as the ICC staff recommendation. The ALJs drafted a proposed order allowing the manual loop qualification charge proposed by Ameritech Illinois. (R. 9, Pl.'s Facts, ¶ 21.)

The ICC rejected the proposed charge on the grounds that it did not comply with TELRIC principles. (R. 9, Pl.'s Facts, ¶ 21; R. 10, Pl.'s App., Ex. A at 21.) In its Arbitration Decision, the ICC noted that Ameritech Illinois had previously submitted an identical cost study in prior proceedings addressing its proposed charge for the manual loop qualification procedure, and at that time the ICC had found that the study did not conform to TELRIC pricing methodology. (R. 10, Pl.'s App., Ex. A at 21 - 22.) In addition, the ICC held that to impose this

charge now on McLeod, when it had not allowed the charge to be incorporated in previous interconnection agreements, would be discriminatory and therefore a further violation of TELRIC. (*Id.*) Ameritech Illinois contends in its motion for summary judgment that this decision was arbitrary and capricious and should be reversed on the grounds that the ICC failed to consider the additional evidence provided by Ameritech Illinois in support of its cost study and because no evidence in the record supports the existence of another, "most efficient technology" as described in the FCC TELRIC rules.

## LEGAL STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In order for the Court to issue a declaratory judgment, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Boozell*, 979 F. Supp. at 674 (internal quotations omitted). "When all is said and done . . . 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teaching and experience concerning the functions and extent of federal judicial power.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). Although neither Defendant filed a cross motion for summary judgment, an evaluation of Ameritech Illinois' motion calls for "an adjudication of present right upon established facts," and therefore a denial of Ameritech Illinois' motion for summary judgment necessitates declaratory judgment in favor of the defendants. *Boozell v. United States*, 979 F. Supp. 670, 674 (N.D. Ill. 1997) (internal quotations omitted).

4

This Court has jurisdiction over this proceeding pursuant to 47 U.S.C. § 252(e)(6). The Act, which authorizes federal review of state agency findings made pursuant to 47 U.S.C. §§ 251 – 252, does not itself provide a standard of review. Federal district courts have uniformly held that a state agency's legal determinations are to be reviewed *de novo*. *U.S. West Communications, Inc. v. Hix*, 986 F. Supp. 13, 18 (D. Colo. 1997). Any other determinations made during an arbitration proceeding are reviewed under the arbitrary and capricious standard. *Id.*

In *Hix*, the first district court case addressing standard of review under the Act, the court laid out a series of factors for determining whether an agency has acted arbitrarily and capriciously in the fulfillment of its responsibilities under §§ 251-252. 986 F. Supp. at 18. The court held:

> Generally, an agency decision will be considered arbitrary and capricious if the agency had relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* (quoting *Friends of the Bow v. Thompson*, 124 F.3d 1210, 1215 (10th Cir. 1997)). The court noted, however, that it was "not empowered to substitute its judgment for that of the agency." *Id.* at 18. Later opinions concerning state agency decisions under the Act largely have embraced the *Hix* holding on standard of review, varying only with respect to language concerning the level of deference owed to state agency determinations. *MCI Telecomm. Corp. v. U.S. West Communications*, 204 F.3d 1262, 1266 (9th Cir. 2000) (agency factual findings "are reviewed for substantial evidence"); *GTE South, Inc. v. Morrison*, 199 F.3d 733, 745, n.5 (4th Cir. 1999) (courts are not required "to sit as a super public utilities commission"; "with respect to review of fact findings, there is no meaningful difference between [an arbitrary and capricious] standard

and the substantial evidence standard we apply"); *Mich. Bell Tel. Co. v. Airtouch Cellular, Inc.*, No. 00-CV-70034-DT, 2002 WL 551043, *3 (E.D. Mich., Mar. 27, 2002) (district courts should not "second-guess the decisions made by the state agency") (internal quotations omitted); *Ill. Bell Tel. Co. v. WorldCom Tech., Inc.*, No. 98 C 1925, 1998 WL 547278, *5 (N.D. Ill. July 21, 1998) (". . . factual findings, are reviewed with substantial deference."). The Seventh Circuit has not yet addressed the level of deference to be accorded state agency factual findings under 47 U.S.C. §§251-252. However, employing even the least deferential formulation of the standard of review, the "substantial evidence" review adopted by the Fourth and Ninth Circuits,[1] this Court holds that the ICC's factual findings concerning Ameritech Illinois' cost study are not erroneous.

## ANALYSIS

There are no material facts in dispute in this case. The crux of Ameritech Illinois' claim is that the ICC failed to adequately consider important evidence supporting a finding that its cost study, submitted in support of its proposed charge for manual loop qualification, complied with the TELRIC pricing methodology. Ameritech Illinois claims that, because the ICC failed to consider this evidence, its finding that the proposed manual loop qualification charge violated TELRIC was arbitrary and capricious. In support of this contention, Ameritech Illinois points to the Proposed Order drafted by the Administrative Law Judges (ALJ) recognizing the persuasiveness of the evidence and allowing the charge. Ameritech Illinois further contends that because it met its burden under the statute of providing a cost study in support of its proposed charge, McLeod bore the burden of proving that a more efficient alternative existed and failed to do so.

---

[1] Although we employ the standard articulated by the Fourth and Ninth Circuits to establish a minimum threshold of review for the purposes of this opinion, we do not adopt either circuit's formulation in the absence of a Seventh Circuit holding on the issue.

We first note that the ICC is not bound by the recommendations and findings of the ALJ. Ameritech Illinois concedes that the ICC, not the ALJ, is the fact finder in ICC proceedings. (R. 9, Pl.'s Mem. at 10). Ameritech Illinois has not offered, and this Court has been unable to find, any persuasive authority for its contention that this Court should give weight to the ALJ's Proposed Order in evaluating whether the ICC has acted arbitrarily and capriciously. Ameritech Illinois cites *NLRB v. Stor-Rite Metal Products, Inc.*, 856 F.2d 957, 964 (7th Cir. 1988), for the proposition that "the evidence supporting [an agency's] conclusion may be viewed as 'less substantial' than it would be if the [agency] and the ALJ had reached the same conclusion." *Stor-Rite*, however, is distinguishable from the present case. There the NLRB reversed the decision of an ALJ overseeing a hearing on unfair labor practices. *Id.* at 962. In reviewing the NLRB's decision under a substantial evidence standard of review, the court noted that "the significance of the findings of the ALJ depends largely on the importance of credibility determinations to the outcome of the case at issue." *Id.* at 964. The NLRB, unlike the ALJ, was not present during witness testimony, and therefore was at a disadvantage in evaluating the credibility of that testimony.

Based on the record of the present proceedings, credibility of witnesses appears not to have been a factor in either the ALJs' proposed order or the ICC's final order. The ALJ finding upon which Ameritech Illinois seeks to rely concerned the lack of evidence offered by McLeod, and was not a factual finding based on observations made solely by the ALJs. (R. 1, Compl., Ex. C at 22.) For this reason, we will not give any special weight to the ALJs' proposed order in determining whether the ICC acted in an arbitrary or capricious manner.[2]

---

[2] We also point out that the *Stor-Rite* decision dealt with federal appellate review of a federal agency decision. We do not decide whether this holding extends to federal district court review of state agencies.

Ameritech Illinois was obligated under the FCC Rules to provide a cost study conforming to TELRIC principles in support of its proposed manual loop qualification procedure. 47 C.F.R. § 51.505(e). The cost for a network element under the TELRIC methodology is based not on the cost to the ILEC of providing that element using its current practices, but rather on the "forward-looking cost by reference to a hypothetical, most efficient element at existing wire-centers. . ." *Verizon Communications, Inc. v. Federal Communications Comm'n*, 535 U.S. 467, 122 S.Ct. 1646, 1667 (2002). *See also AT&T Corp. v. Iowa Util. Bd.*, 525 U.S. 366, 375 n.3 (1998). "TELRIC is not a specific formula, but a framework of principles that govern pricing determinations." *AT&T Corp. v. Federal Communications Comm'n*, 220 F.3d 607, 615 (D.C. Cir. 2000).

Ameritech Illinois submitted and the ICC evaluated a cost study that Ameritech Illinois had submitted in a prior proceeding involving multiple CLECs. In the prior proceeding, after hearing Ameritech Illinois' arguments in favor of the charge, the ICC found it was not TELRIC compliant, basing its decision on the fact that Ameritech Illinois currently maintained its loop information in a mechanized format and therefore should be able to generate it without manual intervention. (R. 10, Pl.'s App., Ex. I at 44.)

Ameritech Illinois next presented additional evidence in support of the charge, offering expert testimony that mechanized loop qualification information was captured in Ameritech Illinois' systems, but "either by design or error" the systems occasionally produced different results ("the systems hiccupped or burped. . ."), requiring manual intervention in the form of the manual loop qualification procedure. (R. 10, Pl.'s App., Ex. G at 150.) In subsequent rebuttal testimony, Ameritech Illinois provided two additional instances where manual intervention may be required. (R. 10, Pl.'s App., Ex. F, line 70 – 93.) The expert testimony suggests that the

8

trigger for a manual loop qualification procedure is not so much a failure in technology as one of information storage and design.[3] In response to this testimony, an ICC expert offered his own opinion that the forward-looking costs for retrieval of loop qualification information "should be *de minimus*, since using the most advanced telecommunications technology . . . this process should be entirely automated." (R. 10, Pl.'s App., Ex. H, lines 32-35.) The ICC agreed, and held that "[t]he fact that Ameritech incurs costs using a manual process today does not mean that it is entitled to assess a charge to CLECs for its inefficient process. To conclude otherwise would abandon the TELRIC principles altogether." (R. 9, Pl.'s App., Ex. A at 21.) In essence, the ICC rejected the evidence of additional scenarios requiring manual loop qualification because it failed to support Ameritech Illinois' contention that its cost study reflected "forward-looking cost(s) by reference to a hypothetical, most efficient element at existing wire-centers." (*Id.* at 21-22.)

We are not prepared to say that the ICC's subsequent finding denying this charge was "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ilix*, 986 F. Supp. at 16. We find sufficient evidence in the record to support the

---

[3] Based on the record we find it reasonable to conclude that, if Ameritech Illinois redesigned its systems utilizing the same technology available to it today, these problems could be resolved. This conclusion is supported by Ameritech Illinois' assertion in its Motion for Summary Judgment that manual loop qualification is required when "(1) the data from two of [its] electronic systems do not match . . . (2) the loop's telephone number is on a Universal Digital Carrier system . . ., and mechanized loop qualifications fail because the equipment and multiple cable pairs involved in such a system are not inventoried in Ameritech Illinois' electronic systems or are inventoried in an electronic format that cannot be passed mechanically from one system to another;" and that "(3) Ameritech Illinois' mechanized loop qualification systems are capable of retrieving information from only one wire center at a time, so if a loop crosses a wire center boundary, the mechanized process will fail." (R. 9, Pl.'s Facts, ¶ 14.) Although Ameritech Illinois described instances where its technology currently breaks down in loop qualification, it made no effort to show that these problems could not be addressed either through the more efficient use of its own technology or by allowing McLeod to access its systems directly.

ICC's finding that the proposed charge was not TELRIC compliant. Ameritech Illinois conceded that loop qualification information was available in a mechanized format, but produced no technical explanation of why mechanized retrieval would not be feasible using currently available technology, offering instead examples of instances where mechanized retrieval fails. Under FCC rules, Ameritech Illinois bore the burden of proof that the cost study was TELRIC compliant. 47 C.F.R. § 51.505(e). "An incumbent LEC must prove to the state commission that the rates for each element it offers to do not exceed the forward-looking economic cost per unit of providing the element, using a cost study that complies with the methodology set forth in this section . . ." *Id.* Given this burden of proof and the expert testimony outlined above, the court finds sufficient evidence in the record to meet the "substantial evidence" review requirement adopted by the Fourth and Ninth Circuits in *MCI Telecommunications* and *GTE South.*

Ameritech Illinois argues alternatively that the ICC's order constituted legal error, claiming that "the ICC in effect concluded that manual loop qualification work is *per se* inefficient and not compensable under the 1996 Act." (R. 9, Pl.'s Mem. at 12.) The evidence does not support this assertion. As stated above, the ICC considered evidence presented by Ameritech Illinois and concluded that it did not meet TELRIC standards. This is not a legal determination, but a factual determination made by weighing the evidence. The ICC did not find that a manual loop qualification procedure could never be valid; rather, it found that given the existing technology available to Ameritech Illinois, as described by its own experts, Ameritech Illinois had not demonstrated that the "most efficient telecommunications technology currently available" would still require manual intervention.[4]

---

[4] Ameritech Illinois also asserts in its motion that the sole reason for the ICC's decision not to include the proposed manual loop qualification charge in its interconnection agreement with McLeod was the fact that other CLECs operating in Illinois did not pay such a charge, and therefore imposing it on McLeod would be discriminatory and barred under TELRIC. Because we affirm the ICC's factual determination that Ameritech Illinois' cost analysis did not reflect

10

## CONCLUSION

For the reasons stated above, Ameritech Illinois' motion for summary judgment is denied. Because there are no issues of material fact in this case and the ICC and McLeod are entitled to judgment as a matter of law, declaratory judgment is entered for the ICC and McLeod. (R. 9-1.) The Clerk of the Court is instructed to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Defendants.

ENTERED: _____

Judge Ruben Castillo
United States District Court

Dated: February 20, 2003

---

the "most efficient telecommunications technology currently available," we need not address Ameritech Illinois' argument that a finding by the ICC based purely on discriminatory impact is in violation of federal law.